IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ALBERT T. GREELEY, III, JU-7219,  )
    Petitioner,  )
      )
    v.  ) 2:16-cv-89
      )
ROBERT D. GILMORE, et al.,  )
    Respondents.  )

MEMORANDUM and ORDER

    Albert T. Greeley, III and inmate at the State Correctional Institution – Greene has presented a petition for a writ of habeas corpus (ECF No.3). For the reasons set forth below, the petition will be dismissed and because reasonable jurists could not conclude that a basis for appeal exists, a certificate of appealability will be denied.

    Greeley is presently serving a seven to twenty year period of incarceration imposed following his conviction by a jury of possession with intent to deliver and possession of a controlled substance at CP-26-CR-133-2009 in the Court of Common Pleas of Fayette County, Pennsylvania. He also pled guilty to charges of a summary offense of driving without a license. This sentence was imposed on October 31, 2011.[1]

    Although a timely appeal was not filed, petitioner was granted leave to appeal nunc pro tunc, and raised the following issues in the Superior Court:

    1. Did the Commonwealth present insufficient evidence to support the intent to deliver and possession of a controlled substance charges; in that the Commonwealth failed to establish [that Greeley] was aware there were drugs in the vehicle, and the drugs were in [Greeley's] possession and control as the vehicle was not owned by [Greeley]?

    2. Did the Commonwealth present insufficient evidence to support the intent to delive[r] charge, in that there was no indicia that [Greeley] had sold drugs or the quantity was not enough to support the charge?

---
[1] See: Petition at ¶¶ 1-6.

3. Did the trial court err when the court denied the request for a mistrial based on the testimony presented by the officer related to funds forfeited, when at the previous trial[,] a mistrial was granted for the same testimony.

On February 21, 2013, the judgment of sentence was affirmed.[2]

On April 23, 2013, Greeley filed a post-conviction petition. That petition was denied and an appeal to the Superior Court was filed in which the issues raised were:

A. Mr. Greeley's trial counsel was ineffective thus violating his rights to a fair trial.

B. Mr. Greeley was denied his right to appeal based upon the ineffectiveness of his appellate counsel.[3]

The denial of post-conviction relief was affirmed on February 11, 2015[4] and leave to appeal was denied by the Pennsylvania Supreme Court. Commonwealth v. Greeley, 118 A.3d 1108 (Pa. 2015).

In the instant petition, executed on January 13, 2016 and received on January 20, 2016 Greeley raises the following issues:

1. Petitioner's counsel was ineffective in failing to conduct a reasonable pre-trial investigation, in violation of Petitioner's right under the 6th and 14th Amendments. Specifically, trial counsel failed to summons fact witnesses and to put on defense witnesses at trial. Wiggins v. Smith, 539 U.S. 510 (2003).

2. Petitioner's counsel was ineffective for failing to object or seek exclusion of Commonwealth's expert witness testimony in violation of petitioner's rights under the 6th and 14th Amendments of the U.S. Constitution. Strickland v. Washington, 466 U.S. 668 (1984).

3. Petitioner's counsel was ineffective for failing to object to the expert's and other witness testimony regarding the "wad of cash". The forfeiture issue in violation of the 6th and 14th Amendments of the U.S. Constitution. Strickland v. Washington, 466 U.S. 668 (1984).

4. Petitioner's counsel was ineffective for failing to request a proper jury instruction in violation of the 5th, 6th and 14th Amendments of the U.S. Constitution. Specifically trial counsel failed to request a standard expert witness jury instruction. Strickland v. Washington, 466 U.S. 668 (1984).[5]

It is provided in 28 U.S.C. §2254(b) that:

---

[2] See: Exhibit 5 to the answer. The Superior Court concluded as did the trial court that the petitioner did not move for a mistrial.
[3] See: Exhibit 10A to the answer at pp.1-2.
[4] See: Exhibit 10 to the answer.
[5] See: Attachments to the petition.

> An application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State, or that there is either an absence of available State corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner.

This statute represents a codification of the well-established concept which requires that before a federal court will review any allegations raised by a state prisoner, those allegations must first be presented to that state's highest court for consideration. Preiser v. Rodriguez, 411 U.S. 475 (1973); Braden v. 30th Judicial Circuit Court of Kentucky, 410 U.S. 484 (1973); Doctor v. Walters, 96 F.3d 675 (3d Cir. 1996). The Commonwealth concedes that the instant petition is both timely and that the petitioner has exhausted the available state court remedies.[6]

The background to this prosecution is set forth in the February 11, 2015 Memorandum of the Superior Court:

> On October 30, 2008, Trooper James Pierce observed Greeley operating a vehicle he later confirmed to be a vehicle owned by another [person]. Pierce testified he initially approached Greeley "because he knew" Greeley did not possess a valid driver's license.
>
> Upon stopping behind Greeley's vehicle to purportedly investigate why Greeley was operating a vehicle without a driver's license and also to determine who was the owner of the vehicle, Greeley identified to the trooper that the vehicle was owned by James Silbaugh. The trooper requested proof of ownership and Greeley opened the passenger side of the vehicle whereupon Trooper Pierce smelled burnt marijuana emanating from inside the vehicle.
>
> Trooper Pierce was given permission by Greeley to conduct a pat-down search of his person, wherein, Pierce discovered a small quantity of marijuana inside Greeley's pants pocket. Almost immediately thereafter, Greeley's mother-in-law and father-in-law, Darnice and Dennis Sykes, arrived at the scene. Greeley's mother-in-law walked over to Greeley and gave him a hug.
>
> Pierce "pulled Greeley away from Mrs. Sykes" and noticed he was "holding a wad of cash in his left hand." … After separating Greeley away from Mrs. Sykes, another vehicle arrived at the scene and Mrs. Sherry Silbaugh (the wife of the putative owner of the vehicle) was approached by the trooper to obtain consent to search the vehicle Greeley had been operating.
>
> As a result of the vehicle search, Pierce recovered from the enclosed vehicle console a plastic baggie containing a white powder later confirmed to be cocaine.

---

[6] Response at p.6.

The seized vegetable matter recovered from the Greeley's pants pocket was also confirmed to be marijuana.

At trial, Corporal Dennis Ulery of the Pennsylvania State Police was qualified as an expert witness. Corporal Ulery provided his opinion that the cocaine was possessed by Mr. Greeley … with the intent to deliver for sale. … Based upon the Corporal's experience in narcotics investigations, the cash "possessed by Greeley was indicative of a drug dealer's 'stack.'" Corporal Ulery cogently testified that he was not aware that when Trooper Pierce initially patted down Greeley, Pierce did not "feel" the wad or stack of cash. Corporal Ulery also testified he was not aware of where the cocaine was located, once discovered, by Trooper Pierce.

During the course of the trial, the Commonwealth failed to produce the actual funds or wad of cash attributed to Greeley and attributed by Ulery as what "drug dealers" possess incident to distribution activity. Instead, the Commonwealth produced photographs of the cash.

During the trial, Trooper Morrison was allowed to testify regarding the cash allegedly obtained from Greeley, in response to whether any DNA evidence was obtained from the cash, that the cash "went to forfeiture."[7]

The issues which the petitioner seeks to raise here all involve allegations of ineffectiveness of trial counsel.

In Strickland v. Washington, 466 U.S. 668 (1984), the Supreme Court explained that there are two components to demonstrating a violation of the right to the effective assistance of counsel. First, the petitioner must show that counsel's performance was deficient. This requires showing that "counsel's representation fell below an objective standard of reasonableness." Id. at 688; see also Williams v. Taylor, 529 U.S. 362, 390-91 (2000). Second, under Strickland, the defendant must show that he was prejudiced by the deficient performance. "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687, 104 S.Ct. 2052. To establish prejudice, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. The Strickland test is conjunctive and a habeas petitioner must establish both the deficiency in performance prong and the

---

[7] See: Exhibit 10 to the answer at pp.1-3.

prejudice prong. See Strickland, 466 U.S. at 687; Rainey v. Varner, 603 F.3d 189,197 (3d Cir.2010) cert. denied 131 S.Ct. 1673 (2011). As a result, if a petitioner fails on either prong, he loses. Rolan v. Vaughn, 445 F.3d 671 (3d Cir.2006).

Pennsylvania requires that claims of ineffective assistance of counsel be raised in post-conviction proceedings rather than on appeal. Com. v. Bozic, 997 A.2d 1211 (Pa.Super), leave to appeal denied 608 Pa. 659 (2010), cert. denied 131 S.Ct. 2939 (2011). The issues which the petitioner raises here alleging the ineffectiveness of counsel were addressed by the Superior Court in response to his post-conviction appeal and the latter court adopted the opinion of the trial court (Ex.10) which thoroughly reviewed these claims (Ex.8).

Greeley's first issue is that counsel was ineffective for failing to conduct a reasonable pre-trial investigation and in failing to summon certain fact witness to testify for the defense. Specifically, he contends that counsel was ineffective in failing to call Darniese Sykes as a witness who would have testified that the "wad" of money that the petitioner possessed was a payment to her for child-care expenses thereby rebutting the inference that the funds were drug proceeds; secondly he alleges that trial counsel was ineffective in failing to call Sherry Silbaugh as a witness and that she would have testified that her car had been used by several individuals that day.

At the continued post-conviction hearing held on March 18, 2014 (Ex. 8(a)), trial counsel testified that he was aware that a mistrial had been declared in the petitioner's first trial due to testimony that the funds seized from the petitioner had been forfeited but determined that at best he could secure was a jury instruction on the testimony regarding forfeiture (pp.7,12-13); that the petitioner informed him about his mother and grandmother but not about other potential witnesses although other individuals were named in the police report (p.8); that he recalled something about the petitioner receiving money from another individual [Greeley's girlfriend] to use for his daughter's tuition but lacked specific information about this matter and did not see any reason to attempt to contact her (pp.9-11); that the Commonwealth's expert was new to the case and had just learned about the packet of money recovered from the petitioner but was willing to testify that in his expert opinion it reasonably represented drug proceeds (pp.10,15); that he did not believe that testimony regarding the source of the money would have made any

5

difference (p.16); that since the person with control of the vehicle was an admitted drug abuser, he did not believe her testimony about authorizing petitioner to use the vehicle would have made any difference and in fact would have been detrimental (p.19); that even with an explanation about receiving the funds from petitioner for his daughter's tuition any testimony from Darneise Sykes would have been detrimental to the defense (pp.19-20) and that he believed the trial was a "clean" trial (p.18).

Testimony was also received from Dianne Zerega who was petitioner's direct appeal counsel (p.24-35). She testified that as "conflicts" counsel she deals with her clients through correspondence at which the petitioner was very adept (p.24-35); that the petitioner had related to her about trial counsel's failure to subpoena witnesses, a matter of ineffective assistance of counsel, which she determined had to be raised under Pennsylvania's post-conviction act and not in a direct appeal (p.28-29); that she did not discuss the jury instructions with the petitioner (p.29) and that she did not believe petitioner wanted her to appeal from the Superior Court decision to the Pennsylvania Supreme Court (pp.30-31,33).

The petitioner also testified at the March 18, 2014 hearing (p.35-52). He testified that appellate counsel did not contact him (p.36); that he wrote to appeals counsel about the issues he believed should be raised (pp.37-39); that although he wanted to appeal to the Pennsylvania Supreme Court, counsel informed him that there were no credible issues to raise on appeal (p.39); that his post-conviction issues were ineffective assistance of counsel in failing to interview the car owner, failing to interview persons who observed him giving the tuition money to Sykes, and failing to move for a mistrial rather than a curative instruction concerning the forfeiture of the money (pp.40-42); that at the time the police stopped him he did possess marijuana but not cocaine (p.42); that his lawyer advised him not to testify at trial (pp.49-50) and that he had a record of prior drug convictions (p.49-50).

At the initial post-conviction hearing held on February 19, 2014 (Ex.8(a)), Darneise Sykes testified that petitioner was arrested outside her home (p.9); that he was coming to visit his daughter and provide some financial support (pp.10,12); that he occasionally helped with his daughter's expenses (p.12); that petitioner worked as a dishwasher at Denny's (p.15); that he attempted to give her the money (pp.10,16,17); that

6

he normally did not give her $6000 for support of his child (pp.14-15) and that she was never contacted by petitioner's attorney and would have been willing to testify at trial (pp.11-2, 31-32).

Sherri Silbaugh also testified at the February 19, 2014 hearing that she had let other individuals use her vehicle in exchange for drugs (p.28); that others had used the vehicle in the very recent past (p.20); that petitioner only had the vehicle for ten minutes when he was stopped by the police (pp.20-21) and that although she would have testified at trial she was never contacted (pp.26, 30).

In reviewing the absence of testimony from Ms. Sykes, the post-conviction court observed that had she testified, her testimony about the $6000 would have cast greater suspicion on the petitioner's source of that sum. (Ex.8 p.8). Regarding Ms. Silbaugh's possible testimony the court concluded that as an admitted drug user her testimony was not credible and "would have almost certainly caused prejudice." (Ex.8 p 9). At the post-conviction hearing trial counsel testified that he did not believe any of this testimony would have been helpful (Ex. 8(a)). In light of the post-conviction court's interpretation of the proposed testimony of these two witnesses, counsel cannot be faulted for making the tactical decision not to investigate their involvement and call them as witnesses . Rolan v. Vaughn, 445 F.3d 671 (3d Cir. 2006). The same may be said about appellate counsel. For this reason, Greeley's first claim does not provide a basis for relief.

Petitioner's next argument is that counsel was ineffective for failing to move to exclude the Commonwealth's expert witness, Corporal Dennis Ulrey of the Pennsylvania State Police. At trial, Ulrey testified about his thirteen years of experience in investigating drug crimes (TT.10/5/11 p.48); that he has received special drug training education (Id. p. 48-49) that he has engaged in many undercover cocaine and marijuana purchases (Id. p.49); that he had previously been accepted as a narcotics expert by the courts (Id. p.50) and by stipulation he was accepted as an expert (Id. 50). He testified that he had no doubt that an individual possessing 124 grams of cocaine which had a street value of about $12,400 as well as $6000 in cash would be indicative of possession with intent to deliver, since personal users normally possess a gram or less of cocaine (Id. 52,53,56); that normally drug proceeds are packaged in $1000 bundles (Id. p.53) and that in the past he had refused to testify as an expert if he was not comfortable with his

7

conclusions (Id. p.55). There was no basis upon which counsel could have reasonable argued to exclude Ulrey as an expert, and this claim does not provide a basis for supporting a claim of ineffective counsel. <u>Real v. Shannon</u>, 600 F.3d 302, 310 (3d Cir.2010)("counsel was not ineffective for failing to raise a meritless claim").

Petitioner's next argument is that counsel was ineffective for failing to object to testimony regarding the "forfeiture" of the $6000 that was seized. At petitioner's first trial testimony of the "forfeiture" resulted in the declaration of a mistrial. At petitioner's second trial, witness Morrison again testified. He testified that he was a Pennsylvania State Police forensic technician (TT.10/5/11 p.33); that he received the cocaine, marijuana and cash that were seized evidence from a Trooper whereupon he photographed, packaged and put it into evidence storage (Id. p.33-35); that after field testing the suspected drugs he forwarded them to the crime lab for processing (Id. p.36-37); that he also processed and photographed the cash (Id. p.38) and that the packaged cash went to forfeiture (Id. p.44). Defense counsel immediately objected and requested a curative instruction regarding forfeiture (Id. p.44) whereupon with approval of all counsel, the Court instructed "ladies and gentlemen of the jury, the fact that the currency would have been submitted to asset forfeiture has no bearing upon this case. It has no bearing upon the guilt or innocence of the defendant" (Id. p.44). While counsel did not move for a mistrial, at the post-conviction hearing he testified that he thought the best he could secure was a jury instruction on this issue, and the court delivered the instruction set forth above. Again, as a strategic decision of counsel, this matter should not be second guessed here. <u>Real v. Shannon</u>, <u>supra.</u>

Finally, petitioner contends that he is entitled to relief as a result of counsel's failure to request a jury instruction on expert testimony. In its instructions, the trial court informed the jury,

> One of the elements of the crime of possession with intent to deliver is that the defendant possessed the substance with that specific intent, that is with the intent to deliver. There are basically three ways to determine whether that intent exists … In determining whether it has been proven that the defendant had the intent to deliver the substances you should consider all of the evidence including the evidence as to quantity and quality of the items, the monetary value, the defendant's circumstances and the circumstances of possession. You may conclude that the defendant had the intent to deliver based on circumstantial evidence alone but only if the circumstantial evidence is strong enough to

8

convince you that the Commonwealth has established this intent beyond a reasonable doubt.

(TT.10/5/11 pp.75-76).

In reviewing this issue, the post-conviction court wrote,

> Expert testimony is but one factor among many. Expert testimony, at best, *assists* the trier of fact in finding the intent required under the statute. Review of the record establishes that petitioner's case presented a number of the noted factors, independent of the need for expert opinion. The trial court's instructions also show due acknowledgment of these factors. (Ex.8, p.16)(emphasis in original).

At the post-conviction hearing, defense counsel conceded that he did not request a jury instruction on expert testimony but when asked whether he believed such an instruction could have helped or hurt the petitioner, he "[did not] think it mattered" (TT. 3/18/14 p.23, Ex.8(a)).

Ulrey's testimony was that he received 124 grams of cocaine with a street value of about $12,400 as well as $6000 in cash which lead him to conclude that this evidence was inconsistent with personal use but was consistent with possession with intent to deliver (TT.10/5/11 52,53,56). As the post-conviction court determined this testimony was not of the nature that required the testimony of an expert; that the jury was never instructed on the relevance of expert testimony, and that the jury was instructed to make its determination based on the evidence before it.[8]

As defense counsel testified, an expert witness instruction would not have made any difference or as the post-conviction court wrote,

> Expert testimony is but one factor among many. Expert testimony, at best, *assists* the trier of fact in finding the intent required under the statute. Review of the record establishes that Petitioner's case presented a number of the noted factors, independent of the need for expert opinion. The trial court's instruction also show due acknowledgment of those factors. (Ex. 8 p.16).

---

[8] Pa.S.S.J.I. § 4.80 provides:
> To assist juries in deciding cases such as this one, involving scientific, technical, or other specialized knowledge beyond that possessed by a layperson, the law allows an expert witness with special education and experience to present *opinion* testimony.
>
> An expert witness gives his or her *opinion*, to a reasonable degree of professional certainty, based upon the assumption of certain facts. You do not have to accept an expert's opinion just because he or she is considered an expert in his or her field.

9

For this reason, counsel cannot be deemed ineffective for failing to request an expert witness instruction

      Because there is nothing in the record which would enable one to conclude that petitioner's conviction was secured in any manner contrary to federal law as determined by the Supreme Court, nor involved an inappropriate application of that law, he is not entitled to relief here. For this reason, the petition of Albert T. Greeley, III for a writ of habeas corpus will be dismissed and because reasonable jurists could not conclude that a basis for appeal exists, a certificate of appealability will be denied.

      An appropriate Order will be entered.


Filed: September 8, 2016                                              s/ Robert C. Mitchell
                                                                                                                    United States Magistrate Judge